IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GOUYEN BROWN LOPEZ, ET AL, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES FOREST SERVICE, ET AL., <br><br> Defendants. | No. 1:25-cv-02408-TJK <br><br> **PROPOSED INTERVENOR-DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFFS' PROPOSED PRELIMINARY-INJUNCTION BRIEFING SCHEDULE** |

Proposed Intervenor-Defendant Resolution Copper Mining LLC respectfully opposes the ultra-fast briefing schedule that Plaintiffs have proposed for their motion for a preliminary injunction.

Plaintiffs' complaint and motion for preliminary injunction seek extraordinary relief: an injunction against execution of an Act of Congress. That statute was enacted *more than 10 years ago.* Plaintiffs have thus known for years about the primary claims on which they only now seek injunctive relief. Yet Plaintiffs waited to file their complaint and preliminary injunction motion until just three weeks before the land exchange directed by Congress in the Act is set to occur. That conduct is deeply inequitable. This Court, the government, and Resolution should not be forced to scramble to address intensely fast-moving briefing simply because Plaintiffs delayed unreasonably in filing their motion.

Plaintiffs' request for a breakneck schedule in this Court is all the more inequitable because they deliberately declined to join their claims to closely related

litigation in Arizona that has been ongoing since January 2021. Plaintiffs are Arizona residents who share common interests with the plaintiffs in three similar cases filed in the District of Arizona in 2021. Plaintiffs here raise the *very same claims* as the plaintiffs in those three Arizona cases. In one of the Arizona cases, the district court and the court of appeals rejected the plaintiff's religious-freedom claims (the same religious-freedom claims raised by Plaintiffs here), and the Supreme Court denied plaintiff's petition for a writ of certiorari. The other two Arizona cases are currently proceeding on preliminary injunction motions raising the other claims that Plaintiffs here now seek to pursue. The district court in Arizona (the Hon. Dominic Lanza) has been overseeing injunction briefing in those cases and has set a hearing for August 6 on those plaintiffs' motions to enjoin the land exchange.

Plaintiffs could have joined one or more of those Arizona cases at any time over the last four years. Instead, they waited to file suit until less than one month before the statute requires the land exchange to take place. Then, just one day after filing their complaint, they filed a 36-page motion seeking to enjoin execution of the statute requiring the land exchange on five separate grounds—and demanded that Defendants should have just seven calendar days to respond.

Resolution has moved to intervene in this matter. And both the Federal Defendants and Resolution have moved to transfer this case to the District of Arizona, where all relevant parties and witnesses are located, and where the district court is already familiar with the statute at issue, the environmental-evaluation process surrounding it, and the legal claims that Plaintiffs raise here. Upon transfer, this case can be consolidated with one or more of the cases that Plaintiffs themselves marked

(correctly) as related actions, and in which injunction proceedings are already ongoing in an orderly fashion.

Resolution respectfully submits that this Court should decline to set a briefing schedule on Plaintiffs' motion for preliminary injunction until after it has ruled on the pending intervention and transfer motions. The Court should transfer the case, and allow the district court in Arizona to set a briefing schedule on Plaintiffs' motion.

In the event that this Court then declines to transfer this action, Resolution respectfully requests that the Court grant the Defendants no fewer than 14 days after the transfer ruling to respond to the motion for preliminary injunction. Plaintiffs will not be prejudiced by that timetable, because contrary to the representations in their motion, Plaintiffs' interests will not be affected at all when the land exchange is completed in accordance with Congress's mandate. Plaintiffs' motion seeks to preserve their access to the federal property, but that access will continue unchanged for years (at minimum) after the land exchange.

## Background

In introducing their claims here, Plaintiffs say that, because a copper ore deposit has been found beneath federal land in central Arizona, "the government has *now* decided to transfer" that land to Resolution so it can mine the copper. Compl. ¶ 3 (emphasis added). That casual formulation obscures that it was *Congress* that "decided to transfer" the property, acting pursuant to its constitutional authority to manage federal land, U.S. CONST., art. IV, § 3, cl. 2, not an agency acting within its discretion. And it was a decision that Congress *made more than 10 years ago*—not "now" or even recently.

Like the plaintiffs in the three Arizona Cases, Plaintiffs here seek to enjoin execution of the Southeast Arizona Land Exchange and Conservation Act, Section 3003 of Public Law 113-291 (Dec. 19, 2014), now codified at 16 U.S.C. § 539p (the Exchange Act or Act). In the Act, Congress directed the Secretary of Agriculture to "expedite" an exchange of federal land to Resolution in exchange for a larger parcel of valuable conservation lands owned by Resolution. 16 U.S.C. § 539p(a). Congress further instructed that the federal land to be conveyed "shall be available to Resolution Copper for mining and related activities subject to and in accordance with applicable Federal, State, and local laws pertaining to mining on land in private ownership." *Id.* § 539p(c)(8).

The Exchange Act will facilitate development of a copper mine that will produce massive amounts of copper for the benefit of the American people. *See* WHITE HOUSE, *Trump Administration Advances First Wave of Critical Mineral Production Projects* (Apr. 18, 2025), https://tinyurl.com/35vru2fy (designating Resolution's mining project as one of ten "critical mineral production projects" necessary "to facilitate domestic production of America's vast mineral resources to create jobs, fuel prosperity, and significantly reduce our reliance on foreign nations"); *see also* Exec. Order No. 14220, § 1, 90 Fed. Reg. 11,001 (Feb. 28, 2025) (domestic copper supplies are "essential to the national security, economic strength, and industrial resilience of the United States"); Presidential Determination Pursuant to Section 303 of the Defense Production Act of 1950, 87 Fed. Reg. 19,775 (Mar. 31, 2022) (announcing policy to decrease reliance on critical minerals from foreign sources in the interests of national security and energy production).

Congress provided that, once the U.S. Forest Service produces a final environmental impact statement (FEIS) analyzing the mining project, the Secretary of Agriculture "shall convey all right, title, and interest of the United States in and to the Federal land to Resolution Copper" "[n]ot later than 60 days" after publication of the FEIS. 16 U.S.C. § 539p(c)(10). The government gave notice on April 17, 2025, that it would release the FEIS on June 20, 2025. *San Carlos Apache Tribe v. U.S. Forest Service*, No. 21-cv-00068 (Apr. 17, 2025), Dkt. 70. The Forest Service then released the FEIS on its website on June 16 and officially published notice of availability of the FEIS in the Federal Register on June 20, meaning that the deadline Congress set to complete the exchange is August 19.

Years ago, plaintiffs with interests common to the Plaintiffs here filed three cases to enjoin the land exchange. Each of those cases was filed in the District of Arizona. In the first case, *Apache Stronghold v. United States*, No. 2:21-cv-50 (filed January 12, 2021), plaintiff alleged the land exchange violated its rights under the Free Exercise Clause of the First Amendment and under the Religious Freedom Restoration Act of 1993 (RFRA). In 2021, the district court (the Hon. Steven Logan) denied that plaintiff's motion to enjoin the land exchange. Order Denying Plaintiff's Motion for Preliminary Injunction (Feb. 12, 2021), Dkt. No. 57. The U.S. Court of Appeals for the Ninth Circuit, sitting en banc, affirmed, *see Apache Stronghold v. United States,* 38 F.4th 742 (9th Cir. 2022); *Apache Stronghold v. United States*, 101

F.4th 1036 (9th Cir. 2024), and the Supreme Court denied certiorari, *Apache Stronghold v. United States*, 145 S. Ct. 1480 (2025).[1]

The other two cases filed in the District of Arizona are *San Carlos Apache Tribe v. U.S. Forest Service*, No. 2:21-cv-68 (filed January 14, 2021), and *Arizona Mining Reform Coalition v. U.S. Forest Service*, No. 2:21-cv-122 (filed January 22, 2021). The plaintiffs in those cases, like Plaintiffs here, seek to enjoin the land exchange by claiming violations of the Exchange Act, the National Environmental Policy Act (NEPA), the Administrative Procedure Act (APA), and the National Historic Preservation Act (NHPA). Those claims surround the Forest Service's environmental review and tribal-consultation process for the land exchange and Resolution's proposed mine. The Tribe also asserted in their complaints the religious freedom claims brought by Plaintiffs here.

After the Forest Service announced in Spring 2025 that it was nearing issuance of the FEIS (which would trigger the statutory deadline to complete the land exchange), plaintiffs in both cases moved on May 14, 2025, for orders enjoining issuance of the FEIS and the land exchange. *San Carlos Apache Tribe*, No. 2:21-cv-68 (May 14, 2015), Dkt. 82; *Arizona Mining Reform Coal.*, No. 2:21-cv-122 (May 14, 2025), Dkt. 68. After full briefing and oral argument, Judge Lanza on June 9 declined to enjoin issuance of the FEIS but, in accordance with the agreement of the parties, ordered that the Forest Service could not convey the federal land before August 19. *San Carlos Apache Tribe*, No. 2:21-cv-68 (June 9, 2015), Dkt. 99. At the same time, Judge Lanza

---

[1] Plaintiffs' counsel here, Mr. Miles Coleman of Nelson Mullins, represented an amicus curiae (Religious Liberty Law Scholars) before the Ninth Circuit.

entered a briefing schedule for filing of amended complaints and amended motions for preliminary injunctions in both cases. *Id.* Pursuant to that schedule, the plaintiffs have filed amended complaints and amended motions for injunctive relief. Judge Lanza has set a hearing on plaintiffs' motions to occur over several hours on August 6. *San Carlos Apache Tribe* Dkt. 113.

## Argument

Just like the plaintiff in *Apache Stronghold* and *San Carlos Apache Tribe*, Plaintiffs here allege that the land exchange will violate RFRA and the Free Exercise Clause. And just like the plaintiffs in *Arizona Mining Reform Coalition* and *San Carlos Apache Tribe*, Plaintiffs here allege that the Forest Service's FEIS for the mine project is deficient under NEPA and the Administrative Procedure Act, and that the Forest Service failed to engage in adequate consultation related to the project under Section 106 of the NHPA.

Plaintiffs have no plausible justification for not attempting to join any of the three Arizona Cases. Nor can they justify waiting until the eve of the statutory deadline for the statutory land exchange to try to enjoin that exchange. And they most certainly cannot justify filing their complaint here, in the District of Columbia more than 2,000 miles away from Arizona where they live, where the land at issue is located, and where the courts are already well familiar with this statute and Plaintiffs' claims challenging it.

Plaintiffs do not dispute that the interests they assert are at this moment pending in the District of Arizona. *See* Notice of Related Pending Cases, Dkt. 2. By the time Judge Lanza rules on the pending motions to enjoin the land exchange after

hearing oral argument on August 6, he will have read hundreds of pages of motion papers and will have heard several hours of oral argument, all pursuant to schedules that permitted orderly briefing.

As Resolution has argued separately, this case fits squarely within the legal authorities that counsel in favor of transferring to the District of Arizona. But even if the Court declines to transfer the case, it should permit Defendants at least 14 days after it rules to respond to the preliminary injunction motion. Plaintiffs have raised five separate grounds for their injunction motion. Preparing an adequate response to each of those will take time. Given Plaintiffs' decision to wait to sue until the eve of the land exchange, it would be unfair to force Defendants to turn away from their briefing and preparations for argument in the long-pending Arizona Cases to respond to Plaintiffs' belated motion to enjoin the exchange in this Court. *See Nat'l Ass'n of Mortg. Brokers v. Bd. of Governors of Fed. Rsrv. Sys.*, 770 F. Supp. 2d 283, 287–288 (D.D.C. 2011*)* (denying request for expedited briefing schedule because, *inter alia*, movant had waited to challenge rule until three weeks before it became effective); *Dietz v. Bouldin*, 579 U.S. 40, 47 (2016) ("[D]istrict courts have the inherent authority ... to manage their dockets and courtrooms.").

Plaintiffs will not suffer any prejudice from affording the Defendants more time to respond to their preliminary injunction motion. Contrary to Plaintiffs' representations, their ability to access and use Oak Flat will not materially change if the land exchange is completed in accordance with Congress's mandate. For one, Plaintiffs will continue to enjoy public access to Oak Flat well after the land transfer occurs. Resolution's President and General Manager, under penalty of perjury, has

committed to maintaining current recreational access to the federal land for the next ten years. Dkt. 11-1 (Victoria Peacey Declaration ¶¶ 36–54). And under the Land Exchange Act, Resolution is required to preserve access to Oak Flat Campground for as long as safely possible. 16 U.S.C. § 539p(i)(3). As explained in the sworn declaration from Resolution's President, that condition will not be triggered for decades—if ever—because the Campground area will likely become unsafe only if the subsidence reaches that area (which may not occur). Peacey Decl. ¶ 50. Thus, for the foreseeable future, public access to the property will not change. *Id.* ¶¶ 50–54.

Moreover, conveyance of title to the federal land is just one piece of the puzzle that must eventually come together for the mine to be built and, in time, operate. Consistent with the Act, *see* 16 U.S.C. § 539p(c)(9)(B), permits and authorizations for things like roads, transmission lines, and pipelines—all of which are necessary to the mine's operation—require separate applications and Forest Service approval. Such agency decisions, when finalized, will be subject to judicial review under the APA. In other words, conveyance of title alone does not mean Resolution will begin mining any time soon. And as just explained, subsidence and eventual loss of access will not occur until even further into the future, if ever.[2]

---

[2]   If this Court were to conclude that responses to Plaintiffs' preliminary injunction motion are due within seven days pursuant to Local Rule 65.1, then Resolution respectfully requests an extension of at least seven days of that deadline under Fed. R. Civ. P. 6(b)(1). Plaintiffs' unconscionable delay in filing suit, combined with the ongoing proceedings over *the same claims* in the District of Arizona, constitute good cause for such an extension. *See Smith v. District of Columbia*, 430 F.3d 450, 456 (D.C. Cir. 2005); *Jordan v. U.S. Dep't of Just.*, 315 F. Supp. 3d 584, 594 (D.D.C. 2018).

## Conclusion

For the foregoing reasons, Resolution respectfully requests that this Court refrain from entering a briefing order on Plaintiffs' preliminary injunction motion until after it rules on the pending motions to intervene and to transfer, which may moot the preliminary injunction motion. In the event the Court denies the motions to transfer, Resolution asks that it be permitted at least 14 days after that order to respond to the motion for preliminary injunction.

Respectfully submitted this 28th day of July, 2025.

By: /s/*Michael R. Huston*
　　　Michael R. Huston (D.C. Bar No. 1012841)
　　　Perkins Coie LLP
　　　2525 E. Camelback Road, Suite 500
　　　Phoenix, Arizona 85016-4227
　　　MHuston@perkinscoie.com
　　　Telephone: +1.602.351.8000

　　　*Counsel for Putative Defendant-Intervenor*
　　　*Resolution Copper Mining, LLC*

-11-